**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EVA M. RHODES, | : | CIVIL CASE NO. |
|    Plaintiff, | : | 3:10-cv-826 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ADVANCED PROPERTY MANAGEMENT | : | MAY 26, 2011 |
|   INC., AND CHURCHILL BRIDGE | : | |
|   ASSOCIATION, INC., | : | |
|    Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTIONS TO AMEND (DOC. NOS. 36 & 37) AND
DEFENDANTS' SECOND MOTION TO DISMISS (DOC. NO. 43)**

**I.   INTRODUCTION**

Plaintiff, Eva M. Rhodes, filed a pro se Complaint alleging, inter alia, that her condominium unit was among three units damaged by sewage back-ups. Complaint at 7-8. Rhodes claims that the defendants—her condominium association and their property management company—collected insurance money in connection with the damage, but failed to use the proceeds to offset or repair the damages to her condominium. Id. Rhodes alleges that the defendants replaced the drywall in one of the other damaged units and provided a check to the owner of the other affected unit. Id. at 7, 8. Rhodes is of African-American descent, and she claims that the owners of the other two units are Caucasian. Id. at 7, 8.

Additionally, Rhodes alleges that defendants displayed discriminatory and "racially intolerant" attitudes toward her on two occasions: at a board meeting for the condominium association, and when the property manager visited her condominium to assess the damage. Id. at 8. Rhodes also claims that the defendants approached her mortgage lender for payment of condominium association fees, thereby damaging her

1

relationship with her mortgage lender and prompting the lender to foreclose. Complaint at 8-9. Using a form complaint, Rhodes placed a checkmark on a line indicating that she was alleging jurisdiction pursuant to "42 U.S.C. § 1983 (applies to state defendants)." Complaint at 2. The Complaint makes no other express reference to specific, formal causes of action.

Defendants filed a first Motion to Dismiss, arguing that the Complaint failed to state a claim under section 1983. See Doc. No. 19. Rhodes then filed two Motions to Amend her Complaint seeking, first, to "amend the jurisdiction to include: 42 USC 1982, 42 USC Chapter 21, 42 USC 3604 and 42 USC 1981," Doc. No. 36, and, second, to "amend the jurisdiction to also include 42 USC 1983, Civil Rights 1968 and the Civil Rights Act of 1866," Doc. No. 37. Defendants responded with a Second Motion to Dismiss, taking account of the statutory provisions referred to in the Motions to Amend. Doc. No. 43. Defendants argue that the complaint fails to state a claim under these statutory provisions.[1] See id. In the alternative, defendants' Memorandum includes a request for a more definite statement. Doc. No. 43-1 at 15-18. Defendants then filed an Objection to the two Motions to Amend "on the grounds that the amendment would be futile and that the motion seeks not to remedy a technical defect in her original jurisdictional allegations, but rather to create entirely new jurisdictional grounds." Doc. No. 44 at 1. While this action was still pending before another judge of this court, the court denied defendants' first Motion to Dismiss as moot in light of the Motions to

---

[1] With respect to some of the claims, defendants also argue for dismissal for lack of subject matter jurisdiction and for failure to add a necessary party. See Def. Mem. at 6-7, 14-15 Because the court finds that each of those particular claims are more appropriately dismissed for failure to state a claim, the court declines to address those arguments.

2

Amend the Complaint and in light of the Second Motion to Dismiss. See Order (Doc. No. 51). However, the court did not take any action on the pending Motions to Amend. For the following reasons, Rhodes' Motions to Amend are now granted, and defendants' Motion to Dismiss is granted in part, and denied in part.

## II. LEGAL STANDARD

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally-cognizable claim by making allegations that, if true, would show she is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). Under the

3

Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

Applying this standard to a pro se complaint, the court must bear in mind that a "document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). "[E]ven after Twombly, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." Boykin, 521 F.3d at 216. Where a pro se complaint must be dismissed due to a pleading deficiency, the court should generally provide leave to amend. Watts v. Services for the Underserved, 309 F. App'x 533, 535 (2d Cir. 2009) ("[W]here the ground for dismissal is quite narrow and the plaintiff appears pro se, it was error to enter judgment . . . rather than permitting plaintiff at least one chance to cure a pleading defect."); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated.").

### III. DISCUSSION

#### A. Plaintiff's Motions to Amend

Given the liberal standards for construing and permitting amendment of pro se pleadings, it would be inappropriate to deny Rhodes' Motions to Amend on the supposed ground that they seek "not to remedy a technical defect in her original

4

jurisdictional allegations, but rather to create entirely new jurisdictional grounds." Def. Obj. at 1. Defendants' characterization of the amendments is not a fair one. The proposed amendments are minor. They do not change the substance of the Complaint. They merely provide reference to certain federal civil rights statutes. To the extent that these statutory references fit the factual allegations of the Complaint, they provide helpful clarification of the basis for Rhodes' claims. To the extent they do not, defendants' previously filed Second Motion to Dismiss is sufficient to address that problem.[2]

Having filed a Second Motion to Dismiss that takes account of each of the proposed amendments, it is not at all clear why defendants have filed a separate Objection to the amendments. Under the circumstances, the implication of defendants' separate opposition is that Rhodes' Complaint should be narrowly read as limited to section 1983 because, acting without the benefit of counsel, she checked a box on a form complaint stating that she was invoking 42 U.S.C. § 1983.[3] That position is untenable. The Motions to Amend are granted, and the Second Motion to Dismiss the Complaint is considered in light of the proposed amendments.

## B. Defendant's Second Motion to Dismiss

### 1. Fair Housing Act Claim

On any fair reading, the Complaint indicates that Rhodes intends to state a claim

---

[2] Tellingly, defendant's alternate argument that the Motions to Amend should be denied on grounds of futility is based entirely on a reference to their Second Motion to Dismiss. Def. Obj. at 6-7.

[3] The only other option expressly provided by the form was that jurisdiction was invoked pursuant to "Bivens, . . . (applies to federal defendants)." Complaint at 2. In a separate section, the form provided a blank space to list any additional bases for jurisdiction. Id. Thus, it is possible that Rhodes selected the section 1983 line because it appeared to be the better of the two options presented on the form.

based upon racial discrimination with regard to the provision of repairs or compensation for damages to her condominium. Even without amendment, such allegations could be deemed sufficient to indicate that Rhodes is asserting a claim under the Fair Housing Act (FHA), 42 U.S.C. §§ 3601, et seq., which prohibits, among other things:

> discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or <u>in the provision of services or facilities in connection therewith</u>, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b) (emphasis added). Rhodes' first Motion to Amend expressly refers to 42 U.S.C. § 3604, and her second Motion to Amend expressly refers to the Civil Rights Act of 1968, of which the FHA is a part.

The FHA permits suits against condominium boards and property managers. "[C]ourts have held that (1) owners; (2) their agents; (3) condominium board members; (4) neighbors; (5) municipalities; (6) public officials; (7) housing vendors; (8) and even arsonists could be liable under the FHA." Fair Housing Justice Center v. Broadway Crescent Realty, Inc., 10-cv-34 (CM), 2011 WL 856095, at *4 (S.D.N.Y. March 9, 2011) (citations omitted). In Schroeder v. DeBartolo, 879 F. Supp. 173 (D.P.R. 1995), a district court denied a motion to dismiss an FHA claim against condominium board members for interfering with the plaintiff's use of common areas in a condominium building. The court explained: "although defendants were not decedent's direct housing provider, they were in a position . . . to discriminate against plaintiff in the provision of housing services or facilities." Id. at 178.

The FHA also permits suits based on discrimination in the provision of reparis or maintenance. Federal regulations interpreting section 3604 provide that prohibited

actions include, among other things, "[f]ailing or delaying maintenance or repairs of sale or rental dwellings because of race, color, religion, sex, handicap, familial status, or national origin." 24 C.F.R. § 100.65(b)(2); see also Committee Concerning Community Improvement v. Modesto, 583 F.3d 690, 711 (9th Cir. 2009).

The allegations of the Complaint are sufficient to state a claim under the FHA. The Complaint indicates that the condominium association maintains insurance with respect to the property at issue. See Complaint at 7, 8 (alleging that Advanced Property Management "had received Insurance Claims money on behalf of the sewage back up claim in my home"). Whatever the purpose or limitations of that insurance, the Complaint also alleges that defendants have, in fact, repaired or compensated for damages to Caucasian condominium owners, but not for related damages to Rhodes, an African-American condominium owner. Id. A condominium association and property management company that provides repairs or compensation for damage to individual condominium units is "in a position . . . to discriminate against plaintiff in the provision of housing services or facilities." Schroeder, 879 F. Supp. at 178; see also 24 C.F.R. § 100.65(b)(2). Rhodes alleges that they have done so here.

Defendants argue that the Complaint fails to state a claim because they find Rhodes' allegations of racial discrimination to be conclusory. In Boykin v. KeyCorp, the Second Circuit reversed the dismissal of a pro se plaintiff's FHA complaint for failure to adequately plead racial discrimination. 521 F.3d 202 (2d Cir. 2008). The Second Circuit emphasized that, even after Twombly, the "complainant 'need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. at 214 (quoting Erickson, 551 U.S. at 93 (quoting Bell Atlantic Co. v. Twombly, 550 U.S. 544,

7

555 (2008))). The Second Circuit held that the plaintiff was not required to plead "racial animus" or to plead facts sufficient to support a prima case of discrimination:

> [I]t is sufficient that Boykin's complaint states that she "is an African American female," describes KeyBank's actions with respect to her loan application and alleges that she "was treated differently from similarly situated loan applicants . . . because of her race, sex, and the location of the property in a predominantly African-American neighborhood."

Boykin, 521 F.3d at 215. Here, the Complaint alleges that plaintiff is African-American; that, after an incident causing damage to three condominium units, defendants provided compensation or repairs to two Caucasian owners, but not to plaintiff; and that their reason for doing so was plaintiff's race. The Complaint also alleges that defendants exhibited racial bias and spoke to her racially intolerant manner at a board meeting for her condominium association and when the property manager visited her condominium to assess the damage. This is sufficient to survive a motion to dismiss. See Boykin, 521 F.3d at 215.[4]

Defendants also argue that the other affected condominium owners were not, in fact, similarly situated because the damage to their condominiums was more extensive. Def. Mem. at 10, 14. Defendants also argue that their insurance policy is intended to "secure the Association from damage to the common elements [of the condominiums] for which they are responsible." Def. Mem. at 10. These are issues going to the merits

---

[4] Defendants quote Sanders v. Grenadier Realty, Inc., 367 F. App'x 173, 175 (2d Cir. 2010), for the proposition that Rhodes must plead "facts supporting an inference of racial animus" in connection with her FHA claim. Def. Mem. at 14. The quotation does not appear in the portion of the Sanders opinion that addresses an FHA claim. In upholding dismissal of the FHA claim, the Second Circuit relied upon the fact that the plaintiffs there, who were represented by counsel, had not adequately pled that they were entitled to the rent subsidies at issue and had failed to allege what the "defendants did or did not do to deny them subsidies." Id. at 176. Here, plaintiff has plainly alleged what defendants did and did not do: defendants are alleged to have provided remediation or repairs to affected condominium owners who were white, and not provided similar remediation to plaintiff who is African-American.

of Rhodes' claim, and they should be addressed at summary judgment or at trial. See Boykin, 521 F.3d at 216 ("The merits of a claim like Boykin's, which on its face presents a plausible allegation of disparate treatment, should be tested on summary judgment."). At this stage, these arguments merely confirm that defendants have notice of the basis for Rhodes' FHA claim. Therefore, dismissal of Rhodes' FHA claim for failure to state a claim would be inappropriate.[5]

### 2. Section 1983 Claim

Both the Complaint and the Motions to Amend indicate that Rhodes seeks to assert a claim pursuant to 42 U.S.C. § 1983. "42 U.S.C. § 1983 applies to a private party's actions only if the actions are fairly attributable to the state." Bernas v. Cablevision Systems Corp., 215 F. App'x 64, 68 (2d Cir. 2007); see 42 U.S.C. § 1983 (authorizing claims against persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."). The Complaint provides no indication that the defendants are state actors. Therefore, defendants' Motion to Dismiss is granted with respect to the section 1983 claim. Rhodes may replead this claim only if there is a basis to allege that defendants' actions are fairly attributable to a state or local government or agency or that the defendants were in a conspiracy with state actors.

### 3. Section 1981 Claim

Rhodes' first Motion to Amend makes reference to 42 U.S.C. § 1981, and her

---

[5] Defendants' Motion contains an argument that plaintiff has failed to exhaust state administrative remedies. See Def. Mem. at 7-8, 14-15. Although the argument is not expressly directed at plaintiff's FHA claim, the court notes that there is no exhaustion requirement for an FHA suit. See 42 U.S.C. § 3613(a)(1)(B)(2); Huntington Branch, N.A.A.C.P. v. Town of Huntington, 689 F.2d 391, 393-94 n.3 (2d Cir. 1982) ("Congress gave explicit consideration to the availability of local remedies and the lack of an exhaustion requirement in Section 812 [i.e., 42 U.S.C. § 3612] strongly suggests that such a requirement was not intended.").

second Motion to Amend makes reference to the Civil Rights Act of 1866, which included the original version of section 1981.  Unlike section 1983, section 1981 permits an action alleging discriminatory conduct against wholly private persons and organizations.  See 42 U.S.C. § 1981(c); Runyan v. McCrary, 427 U.S. 160, 170-71 (1976).  Section 1981 prohibits racial discrimination in the making and enforcement of contracts and in access to legal proceedings:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a).  The right to "make and enforce contracts" includes the right to the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

The Complaint does not allege sufficient facts to support a claim under section 1981.  Although Rhodes has alleged some sort of interference with her relationship with her mortgage lender, she has not provided sufficient factual allegations to set forth a plausible claim under section 1981.  The Complaint alleges that "Advanced Property Management approached my mortgage lender directly on a number of different occasions requesting unpaid condo fees for which I was responsible [and] which my lender paid . . . without my knowledge."  Complaint at 8.  It further alleges that this "forc[ed] me into a foreclosure proceeding, and . . . badly damag[ed] the relationship with my lender because of the number of times they had given then payments."  Id.  "All of which [Rhodes] believes was racially motivated."  Id. at 9.

10

It is not clear why it would have been wrongful for either of the defendants to approach her mortgage lender, or how doing so led to the foreclosure proceedings. If, on the one hand, Rhodes' mortgage lender maintains an escrow account to pay association fees on her behalf, then it is not clear how it would be wrongful for the defendants to seek payment of any association fees that were due, unless perhaps the defendants demanded immediate payment of her fees while permitting greater flexibility and delinquency with respect to the fees of white condominium owners. If, on the other hand, Rhodes' mortgage lender does not bear any responsibility for paying her fees, then it seems both odd and unlikely that defendants would have had reason to contact her mortgage lender or would have sought payment from the mortgage lender or that the mortgage lender would have acceded to this demand. In either case, Rhodes has not pled sufficient facts to make out a plausible claim that defendants have interfered with her contractual relationship with her mortgage lender because of her race.[6]

Defendants' Motion to Dismiss is granted with respect to her section 1981 claim. If Rhodes wishes to replead this claim, she must file an amended complaint setting forth a more detailed factual basis for concluding that defendants have wrongfully interfered with a contractual relationship because of her race.[7]

---

[6] Rhodes does not allege any interference with a contractual relationship between her and the defendants. Although Rhodes may have a contractual relationship with one or both of the defendants, Rhodes has not identified any such contract and has not identified how defendants' actions relate to the terms of such a contract.

[7] Because the court permits Rhodes to replead this claim, the court will address defendants' argument that any section 1981 should be dismissed for failure to exhaust remedies. Section 1981 does not contain a statutory exhaustion requirement. See Tomka v. Seiler Corp., 66 F.3d 1295, 1316 (2d Cir. 1995) ("Unlike a Title VII plaintiff, for example, a § 1981 claimant need not exhaust EEOC remedies . . . ."). Defendants cite Williams v. Interstate Motor Freight Systems, for the proposition that section 1981 claims are subject to a judicially-created requirement of exhaustion of state or local remedies. 458 F. Supp. 20, 25 (S.D.N.Y. 1978). The Williams case cites two cases for this proposition, only one of which involved a section 1981 claim. See Gonzalez v. Shanker, 533 F.2d 832, 833 n.2 (2d Cir. 1976) (listing

11

#### 4. Section 1982 Claim

Rhodes' first Motion to Amend also makes reference to 42 U.S.C. § 1982, which was also adopted as part of the Civil Rights Act of 1866. Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Like section 1981, section 1982 also permits actions to address discrimination by private parties. See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968).

One pertinent question is whether section 1982 extends to claims, like the present one, for racially discriminatory actions in the provision of maintenance or compensation for damages to housing. The Supreme Court has noted that, "in sharp contrast to the Fair Housing Act," section 1982 "is not a comprehensive open housing law," and "[i]t does not deal specifically with discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling." Jones, 392 U.S. at 413. However, the Supreme Court did not foreclose the question of whether section 1982 could, in some cases, be applied to "services or facilities" related to property. Id. at 413-14 n.10 ("In noting that 42 U.S.C. § 1982 differs from the Civil Rights Act of 1968 in not

---

the causes of action to include sections 1981 and 1983); Fuentes v. Roher, 519 F.2d 379, 386 & n.4 (2d Cir. 1975) (discussing exhaustion with respect to a section 1983 claim). In both cases, the Second Circuit expressed "some hesitation" about whether any exhaustion requirement should apply, and both held that the requirement did not bar the claims at issue because there were questions about the adequacy of the administrative remedies. See Gonzalez, 533 F.2d at 833-34, 838; Fuentes, 519 F.2d at 386-87. In Gonzalez, the Second Circuit held that "before a district court may relinquish its civil rights jurisdiction, it must . . . be positively assured—it may not presume—that there are speedy, sufficient and readily available administrative remedies remaining open to pursue . . . ." 533 F.2d at 834 (quotation omitted). It is not clear to this court whether these cases reflect the current state of the law on this issue. It is also not clear whether these cases would support dismissal for failure to exhaust in this case. See Complaint at 9 (alleging inadequacies of the state administrative process). Therefore, if Rhodes wishes to replead a section 1981 claim, and if defendants wish to pursue this argument, further briefing would be required to support defendants' position.

dealing explicitly and exhaustively with such matters . . . we intimate no view upon the question whether ancillary services or facilities of this sort might in some situations constitute 'property' as that term is employed in § 1982.").

Based on the lack of precedent and the availability of other remedies, such as an FHA claim, this court has previously declined to extend section 1982 to claims of racial discrimination in the maintenance of housing facilities. See Green v. Konover Residential Corp., 3:95-cv-1984 (GLG), 1997 WL 736528, *12 (D. Conn. Nov. 24, 1997). The court is not aware of any reason to take a different approach now. Therefore, Rhodes may not assert a section 1982 claim based upon the allegations of disparate treatment in the remediation of damages from the sewage back-ups.

To the extent that Rhodes alleges that the defendants interfered with her relationship with her mortgage lender and forced her into foreclosure, she may have a claim that is within the scope of section 1982. Causing foreclosure on a person's home mortgage certainly impacts that person's right to "purchase" or "hold" property. See 42 U.S.C. § 1982. However, any such claim must be dismissed for the reasons discussed in connection with the section 1981 claim. See supra at 9-11. If Rhodes wishes to replead such a claim, she must file an amended complaint setting forth specific factual allegations explaining and supporting her view that the defendants' wrongfully caused her mortgage to go into foreclosure because of her race.

### 5. Insurance Fraud Claim

Defendants note that Rhodes claims to have been the "victim of insurance fraud." Complaint at 7; Def. Mem. at 9-10. This claim appears amidst the allegations that the defendants received payment on insurance claims, but did not use the proceeds to

Rhodes' benefit. As defendants note, "insurance fraud" can refer to a crime defined by the Connecticut penal code, and the victims of this kind of insurance fraud are insurance companies. See Conn. Gen. Stat. § 53a-215 (requiring "intent to injure, defraud or deceive any insurance company"). Rhodes is not an insurance company, and could not sue for fraud committed against an insurance company under this criminal statute. Alternatively, "insurance fraud" might be taken to suggest a claim under Connecticut's Unfair Insurance Practices Act (CUIPA), which prohibits insurers from engaging in unfair or deceptive practices. See Conn. Gen. Stat. §§ 38a-815, et seq. But the Complaint provides no indication that any unfair, deceptive, or fraudulent act was committed by an insurer. Indeed, no insurer is a defendant.

It is possible that, in using the term "insurance fraud," Rhodes simply meant to allege unfair or unjust activity involving the proceeds of an insurance claim. Rhodes has alleged that defendants received insurance money specifically based on the damages to Rhodes' condominium, but kept that money rather than using it to provide repairs or compensation to Rhodes. Complaint at 8 (alleging that defendants had "received Insurance Claims money on behalf of the sewage back up claim in my home and had kept the monies") (emphasis added). Although these allegations do not state a claim for insurance fraud per se, they suggest that Rhodes may have a claim under a broader cause of action, such as unjust enrichment. See Culver v. Culver, 127 Conn. App. 236, 248-49 (2011). Such a claim need not be based upon allegations of racial discrimination, but could instead have merit if defendants received money specifically based upon damages suffered by Rhodes and did not use that money to benefit Rhodes. Accordingly, defendants' Motion to Dismiss is granted with respect to any

insurance fraud claim. However, Rhodes is granted leave to plead under a more suitable theory, such as unjust enrichment claim, if she so chooses, and to plead more facts which would make it plausible that she has a cause of action based on the defendants' use of insurance payments.

## IV. CONCLUSION

Plaintiff's Motions to Amend (Doc. Nos. 36, 37) are **GRANTED**. Defendants' Second Motion to Dismiss (Doc. No. 43) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion is denied with respect to plaintiff's claim under the Fair Housing Act. It is granted with respect to claims under 42 U.S.C. §§ 1981, 1982, and 1983, and with respect to any claim for insurance fraud. Plaintiff is directed to file an amended complaint within 30 days of this Ruling, incorporating her allegation of a violation of the Fair Housing Act, 42 U.S.C. § 3604, and, if she chooses, repleading the dismissed claims as directed above.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 26th day of May, 2011.

  /s/ Janet C. Hall
Janet C. Hall
United States District Judge