UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EVA M. RHODES, | : | CIVIL CASE NO. |
| Plaintiff, | : | 3:10-cv-826 (JCH) |
| | : | |
| v. | : | |
| | : | |
| ADVANCE PROPERTY | : | OCTOBER 7, 2011 |
| MANAGEMENT, INC., et al., | : | |
| Defendants. | : | |

**RULING RE: DEFENDANTS' THIRD MOTION TO DISMISS (DOC. NO. 89)**

**I. INTRODUCTION**

On June 12, 2011, the plaintiff, Eva M. Rhodes, filed an Amended Complaint asserting claims of negligence, negligent misrepresentation, negligent infliction of emotional distress, and unjust enrichment, as well as violations of the Fair Housing Act ("FHA"), 28 U.S.C. § 3601-19, the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, and the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692-1692p.[1] The defendants, Advance Property Management ("APM") and Churchill Bridge Association ("Churchill"), have moved to dismiss the negligence, negligent misrepresentation, negligent infliction of emotional distress, Section 1981, and FDCPA claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Mot. to Dismiss (Doc. No. 89) at 1.[2] The defendants argue, first, that collateral estoppel bars the claims against Churchill, because the underlying issues were raised and decided in an earlier state court foreclosure proceeding. Id. Additionally, the defendants assert that the claims against APM should be dismissed because the company was not party

---

[1] For a more detailed procedural history of the case, see Ruling Re: Plaintiff's Motions to Amend and Defendant's Second Motion to Dismiss (Doc. No. 74) at 1-3.

[2] The FHA and unjust enrichment claims are not affected by the present motion.

1

to any of the acts from which the claims stem. Id. Finally, the defendants contend that the FDCPA provision cited by Rhodes does not apply to either APM or Churchill, because neither qualifies as a "debt collector" under the Act. Id. at 1-2. For the following reasons, the Motion to Dismiss is denied in part and granted in part.

## II. LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether a plaintiff has stated a legally cognizable claim by making allegations that, if true, would show she is entitled to relief. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

"A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact

pleading standard. Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.

Applying this standard to a pro se complaint, the court must bear in mind that a "document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). "[E]ven after Twombly, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." Boykin, 521 F.3d at 216. Where a pro se complaint must be dismissed due to a pleading deficiency, the court should generally provide leave to amend. Watts v. Services for the Underserved, 309 F. App'x 533, 535 (2d Cir. 2009) ("[W]here the ground for dismissal is quite narrow and the plaintiff appears pro se, it was error to enter judgment . . . rather than permitting plaintiff at least one chance to cure a pleading defect."); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated.").

## III.    BACKGROUND

According to the Amended Complaint, Rhodes entered into a mortgage modification agreement ("the Modification Agreement") with her mortgage servicer, American Home Mortgage Servicing Agent, Inc. ("AHMSI"), on October 1, 2008.

3

Compl. ¶ 5. The agreement encompassed an escrow shortage of $3,368.95 owed to defendant Churchill, Rhodes's condominium association, for unpaid common charges, late fees, and associated foreclosure initiation costs.³ Id. ¶ 6-8. That figure had been described in a letter from Churchill's attorney Keith Shaw as "the payoff of Churchill's account through March 31, 2008." Id. ¶ 8. The Amended Complaint does not specify when Shaw's letter was sent or to whom it was sent.

On November 10, 2008, Shaw sent a letter to AHMSI stating that an additional $3,726.98 was needed to pay off Churchill's account through November 30, 2008. Id. ¶ 9. Again, this sum was comprised of overdue common charges, late fees, and foreclosure initiation costs. Id. ¶ 10.

Rhodes argues that "the amount represented by the defendant as being owed by [her] as of October 1, 2008 was a misrepresentation of the actual amount of the debt owed." Compl. ¶ 11. None of Rhodes's factual allegations, however, suggest that Churchill <u>affirmatively</u> misrepresented her debt. By her own admission, the first letter only purported to state her debt "through March 31, 2008," not her debt through the date of the Modification Agreement, October 1, 2008. Instead, Rhodes appears to be arguing that Churchill had a duty to update its initial tally of Rhodes's debt in advance of the Modification Agreement. Id. ¶ 11 ("All fees owed should have been presented in

---

³ The Amended Complaint does not clearly describe the mechanics of the Modification Agreement, but the court infers that Rhodes's mortgage servicer or lender paid her debt to Churchill and then capitalized this "escrow advance" into the principal of her modified mortgage. See U.S. Department of Housing and Urban Development, Loan Modification Frequently Asked Questions, http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/nsc/faqlm ("Mortgagees must also escrow funds for those items which, if not paid, would create liens on the property positioned ahead of the FHA-insured mortgage.").

4

their totality and included in the original modification agreement.").[4] Rhodes further asserts that, "as a result of the misrepresentation of the debt, [she] was rendered unable to make payments to AHMSI." Id. ¶ 11. Foreclosure actions were subsequently filed by Churchill and Rhodes's mortgage lender, Wells Fargo Bank. Id. ¶ 16.

## IV. DISCUSSION

### A. Collateral Estoppel

A federal court determining the preclusive effect of a state court judgment must apply the preclusion law of the rendering state. Kulak v. City of New York, 88 F.3d 63 (2d Cir. 1996). Under Connecticut law, "to be subject to collateral estoppel, an issue must have been (1) fully and fairly litigated, (2) actually decided, . . . (3) necessary to the judgment in the first action, and (4) identical to the issue to be decided in the second action." Faraday v. Blanchette, 596 F. Supp. 2d 508, 515 (D. Conn. 2004) (internal quotation marks and citations omitted). "An issue has been fully and fairly litigated if the party against whom collateral estoppel is asserted had a 'full and fair opportunity' to litigate that issue in a prior proceeding." Id. (quoting Aetna Cas. & Sur. Co. v. Jones, 220 Conn. 285, 306 (1991)). "An issue has been actually litigated if it is properly raised in the pleadings or otherwise submitted for determination, and in fact, determined." State v. Joyner, 255 Conn. 477, 490 (2001) (internal quotation marks and citation omitted). "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." Id. (internal quotation marks and citation omitted).

---

[4] Rhodes does not specify exactly how much she owed Churchill as of October 1, 2008, but the court infers that some portion of the additional $3,726.98 in overdue common charges and fees specified in Shaw's second letter had already accrued prior to that date.

Rhodes raised the issue of Churchill's alleged misrepresentation of her debt and its effect on her Modification Agreement in connection with a strict foreclosure action Churchill brought against her in Connecticut Superior Court. Def.'s Mot. to Dismiss (Doc. No. 89), Ex. A, ¶ 7. In an affidavit of objection to a motion for summary judgment filed by Churchill in state court, she stated:

> The Plaintiff has billed my mortgage company excessively to the point of billing for charges that should have been inclusive in the modification agreement. They billed the mortgage company again, even after a court modification had been agreed upon. Essentially forcing another foreclosure of the property after the fee schedule has [sic] been worked out in the court agreed upon modification.

Id. Similarly, Rhodes claimed that Churchill "forced a wrongful foreclosure action of [her] property by splitting billings for charges that should have been included in the first mediation of the property. Id. ¶ 4.

Despite Rhodes's objections, the Superior Court granted summary judgment to Churchill in the foreclosure action. See Mem. in Supp. (Doc. No. 89), Ex. B ("As to [Rhodes's liability to Churchill], there is no genuine issue of material fact."). As a result, Churchill argues that Rhodes is collaterally estopped from re-litigating the issue of whether it misrepresented the amount she owed. Mem. in Supp. at 8.

The court, however, is not convinced that the issue of misrepresentation was actually decided and necessary to the judgment in the first action. In arguing that it was, the defendants cite a pair of maxims from Connecticut case law: "Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles. . . . Furthermore, if the mortgagor is prevented by accident, mistake or fraud from fulfilling a condition of the mortgage, foreclosure cannot

6

be had." LaSalle National Bank v. Shook, 67 Conn. App. 93, 96-97 (2001) (citations omitted). However, the strict foreclosure action Churchill filed against Rhodes did not involve a mortgage; it involved a statutory lien for common charges. Mem. in Supp. at 5. The defendants acknowledge this fact, but they claim that "the same principles espoused in LaSalle National Bank applied." Def.'s Reply to Pl.'s Objection (Doc. No. 97) at 3. The court disagrees.

Connecticut Superior Court decisions support the conclusion that a foreclosure action based on nonpayment of common charge assessments is subject to a much narrower range of defenses than a foreclosure action based on mortgage default:

> The Connecticut Supreme Court has stated . . . that an action of foreclosure is peculiarly equitable and the court may entertain all questions which are necessary to be determined in order that complete justice may be done between the parties. When the foreclosure is of a mortgage, courts, principally on equitable considerations, have branched out and permitted defenses and claims for affirmative relief based on theories as diverse as mistake, accident, fraud, equitable estoppel, laches, tender of deed in lieu of foreclosure, breach of the implied covenant of good faith and fair dealing, refusal to agree to a favorable sale to a third party and CUTPA. However, when the foreclosure is by a condominium association against a unit owner and is predicated upon common charges, special assessments and other items made lienable by statute, the Connecticut cases do not exhibit diversity regarding special defenses and counterclaims.

Countrywood Hills Condominium Ass'n, Inc. v. Crumb, No. 137828, 1997 WL 600398, at *2 (Conn. Super. Sept. 19, 1997) (internal quotation marks and citations omitted). In general, Superior Courts have limited special defenses to foreclosure actions by condominium associations to those that attack the validity of the common charges at issue. See Villa Sol D'or Ass'n, Inc. v. Surace, No. CV 980145061S, 1998 WL 405074, at *2 (Conn. Super. 1998) ("[S]everal Superior Courts have held that as a matter of law,

7

a validly levied common charge cannot be the subject of a special defense because it is clear that condominium unit owners are liable for common charges pursuant to the Common Interest Ownership Act.") (citations omitted); Id. at *3 ("Superior Courts have stricken special defenses that are not based upon the lien. . . . If the defendants wish to pursue their grievances against the board, it must be done in a separate action.")[5]

Under these precedents, Rhodes's claim of misrepresentation was an invalid special defense to Churchill's foreclosure action. In her state court affidavit, Rhodes did not assert that she <u>did not owe</u> Churchill the amount stated in Shaw's November letter. Instead, she claimed that Churchill was intentionally or negligently misleading in its correspondence regarding the amount owed. See Mem. in Supp., Ex. A (accusing Churchill of billing "charges that should have been inclusive [sic] in the modification agreement" ); Id. (accusing Churchill of "splitting billings for charges that should have been included in the first mediation of the property). This is not an attack on the validity of the assessments themselves. Contra Byars v. Berg, 116 Conn. App. 843, 848 (2009) (finding collateral estoppel appropriate where plaintiff had argued in an earlier foreclosure action that his condominium association's executive board "was illegally constituted and, as a result lacked the authority to . . . impose common charges on him").

The brief state court ruling notes that Judge Tanzer "considered the answer and special defenses, as well as defendant's objections to this motion." Mem. in Supp., Ex. B. It is not clear whether that means the judge found Rhodes's claim of

---

[5] To justify these limitations on special defenses, courts have cited the Connecticut legislature's clear intent "to protect the financial integrity of common interest communities." Broad Street School Condominium Corp. v. Minneman, No. 0111179, 1997 WL 219516, at *2 (Conn. Super. Apr. 23, 1997).

misrepresentation "meritless," as the defendants contend, or whether she merely found it to be outside the narrow range of permissible defenses in a foreclosure action based on common charges. Furthermore, even if the issue was "actually decided" by the judge, the fact remains that it was not "necessarily determined," because a judgment of foreclosure <u>could</u> have been validly rendered without resolving Rhodes's claim of misrepresentation. <u>See</u> State v. Joyner, 255 Conn. at 490 ("An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered."). Accordingly, the court denies the defendants' motion to dismiss Rhodes's claims on the basis of collateral estoppel.

### B. Claims Against APM

The Amended Complaint lists both Churchill and APM as defendants, and all of Rhodes's claims appear to be asserted against both parties. As the defendants point out, however, the factual allegations underlying her claims for negligence, negligent misrepresentation, negligent infliction of emotional distress, violation of Section 1981, and violation of the FDCPA involve Churchill only; they make no mention of APM. Mem. in Supp. at 9.

Because the Amended Complaint makes no allegations that APM played any role in Churchill's correspondence with AHMSI regarding Rhodes's mortgage debt, the court dismisses all claims against APM other than those for violation of the FHA and unjust enrichment. Rhodes may replead these now-dismissed claims, however, if additional facts exist that connect APM to the alleged misrepresentation.

### C. Claims Under the FDCPA

Under the FDCPA, a "debt collector many not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  A "debt collector" is defined as "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  A "creditor," in contrast, is defined as "any person to whom a debt is owed." 15 U.S.C. § 1692(a)(4).  The defendants argue that, in its allegedly misleading correspondence with AHMSI, Churchill was "merely acting as a creditor attempting to collect its own debt." Mem. in Supp. at 10.  The court agrees.  See Madura v. Lakebridge Condo. Ass'n, 382 Fed. Appx. 862, 864 (11th Cir. 2010) (holding that condominium association "was not subject to the FDCPA because it was no debt collector, it was a creditor.").  Accordingly, the FDCPA claim against Churchill is dismissed.  Additionally, because there appear to be no facts Rhodes could plead that would state a valid FDCPA claim against Churchill, the court does not grant leave to replead this claim.[6]

## IV.     CONCLUSION

Defendants' Third Motion to Dismiss (Doc. No. 89) is granted in part and denied in part.  The claims against APM for negligence, negligent misrepresentation, negligent

---

[6] Rhodes is not, however, barred from repleading her FDCPA claim against APM, which the court dismissed earlier in this Ruling. See discussion supra p. 9.  While the court can say with certainty that Churchill is not a debt collector under the FDCPA, it cannot do the same for APM.  The defendants point out that the FDCPA exempts from its definition of debt collector "any person collecting or attempting to collect any debt owed or due . . . another to the extent that such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added).  They argue that APM fits into this exception, because "[a]s the [Churchill Bridge] Association's property manager, APM obviously 'obtained' the right to collect the assessments before they became overdue." Mem. in Supp. at 10 (emphasis in original).  The Amended Complaint, however, makes no mention of when, if ever, APM obtained the right to collect Rhodes's debt.  It thus provides the court no basis for inferring that APM is a debt collector under the FDCPA, but it also provides no basis for determining that APM is not a debt collector.  Because the court cannot rule out the possibility that Rhodes could plead facts sufficient to state a valid FDCPA claim against APM, Rhodes is granted leave to replead.  Gomez v. USAA Fed. Sav. Bank, 171 F.3d at 795 ("[T]he court should not dismiss without granting leave to amend at least once when a liberal reading of the [pro se] complaint gives any indication that a valid claim might be stated.")

infliction of emotional distress, violation of Section 1981, and violation of the FDCPA are dismissed, as is the FDCPA claim against Churchill. Plaintiff is granted leave to replead the claims against APM. If she chooses to do so, an amended complaint must be filed within thirty (30) days of this Ruling.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 7th day of October, 2011.

                                             `/s/ Janet C. Hall`
                                             Janet C. Hall
                                             United States District Judge